IN RE GUARDIANSHIP OF WILLIAM HOWARD FENNER, A MINOR. LAURENCE HOWARD FENNER, APPELLEE, v. WILLIAM STRICKLAND, GUARDIAN, APPELLANT.

219 N. W. 2d 229

Filed June 13, 1974. No. 39336.

David S. Lathrop and Richard L. Swenson of Lathrop, Albracht & Dolan, for appellant.

David J. Burleson and Joseph P. Inserra of Krause, Inserra, Petersen & Burkhard, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

This is a contest over the guardianship and, consequently, custody of William Howard Fenner, commonly

referred to as Billy. Billy was born March 2, 1967. The present litigation is between Billy's maternal grandfather William L. Strickland, appellant, and his father Laurence Howard Fenner, appellee. Appellant was appointed guardian in the county court. The District Court reversed the judgment and awarded appellee custody. We reverse the judgment of the District Court.

Appellee spent several years in the United States Navy. He was discharged due to a nervous reaction causing stomach problems and draws a disability pension. The family moved to Arkansas in August 1970 and was accompanied by a young woman referred to as Linda. Linda had one child born out of wedlock to a man with whom she had lived for about a year and a half. The group lived most of the time under very crowded conditions with appellee's parents. The two women found employment but appellee failed to work for a considerable period. There is evidence indicating that Linda and appellee became intimate and appellee's wife left, went to Omaha where her father resided, and established a home for herself and her two children. She and her younger son were killed in a car-train accident on August 6, 1972. Prior to her death appellee's wife had obtained a divorce. Efforts were made to get appellee to contribute to the support of his children but he failed to do so and made no effort to see them until several days after the accident when he contacted Billy in the hospital. In the meantime a child had been born to Linda about 9 months after appellee's wife had left him. Appellee and Linda lived together until after the divorce at which time they married. Appellee has now established a separate home for himself and his family and says he operates a trash-hauling route and a junk and antique business.

Billy's mother had obtained psychiatric treatment for him in Omaha. He was hyperactive and his speech was immature. The doctor's history obtained from the mother states: " 'William does not talk very well and

the reason that he does not talk very well is the fact that every time he used to talk when he first started, his dad used to whip him because he would interrupt him. The mother and father have been divorced two years in November and the mother is going to remarry in September. Billy is reported as being in Head Start, never crying, hitting other kids with sticks, pulling their hair, never sits down. He eats well and she can put him outside and he will stay close to home. She said "If I lay down with him he may go to sleep." He has always been very active. At 5 months he had a hernia and had another hernia repaired two years ago. He was born in Newport, Rhode Island and weighed 7 pounds and 11 ounces and was a good baby. He walked at 1 year and had fairly good developmental milestones. The father had some sort of a mental disorder.' "

Billy was severely injured in the accident sustaining a leg injury and possible brain damage. After the accident Billy's condition regressed. He needed rehabilitation for his leg, speech therapy, a special needs school, perhaps psychiatric care, security, and one caretaker. He has been in the care of his grandfather and step-grandmother, has been well cared for, and appears to be attached to them. He is also under the supervision of the Douglas County social services department.

The problem presented is not one devoid of difficulties. "Ordinarily courts may not properly deprive a parent of the custody of a minor child unless it is shown that such parent is unfit to perform the duties imposed by the relation or has forfeited that right." Sanny v. Sanny, 182 Neb. 1, 152 N. W. 2d 27.

We are reluctant to hold under the facts of this case that appellee has forfeited all rights to Billy's custody but we do find that at the present time he is unfit to receive custody. His former treatment of the child, his emotional instability, his demonstrated immorality, and his apparent unsteadiness in his work habits are not conducive to a finding of parental fitness. We have

involved here a child at present suffering mental and physical handicaps. His care during the months to come is critical in regard to his future welfare. He is now well cared for by appellant. To change the boy's custody would be to gamble in regard to the continuance of the mental and physical treatments his condition requires. This we are not disposed to do as: "In determining the question of who should have the care and custody of the children, the paramount consideration is the best interests and welfare of the children." Gydesen v. Gydesen, 188 Neb. 538, 198 N. W. 2d 67. See, also, Loveall v. Loveall, 188 Neb. 457, 197 N. W. 2d 381.

We believe that in a case such as this, it is very important to the welfare of the child that he be retained within the jurisdiction of the court so that continued supervision may be had. Ordinarily the custody of children of tender years should be kept within the jurisdiction of the court having control over them, unless the best interests of the children demand otherwise. See Bauer v. Bauer, 184 Neb. 777, 172 N. W. 2d 231.

The judgment of the District Court is reversed and the cause remanded for entry of judgment in conformity with this opinion.

REVERSED AND REMANDED.